Ladd v. Montgomery.

F. M. LADD et al., Appellants, v. AMANDA MONTGOMERY et al., Respondents.

St. Louis Court of Appeals, February 27, 1900.

1. Covenants, Action On: PARTY TO CONVEYANCE, OR ASSIGNEE OF COVENANTS THEREIN: NO RECOURSE, WITHOUT. The facts disclosed, that deceased wife of plaintiff was the original and only grantee in a deed from her father for certain lands, dated February 5, 1891, and that before her death she, her husband joining,

conveyed the same, and covenanted against incumbrances, that on the land conveyed was a former deed of trust, and that she left at her death two heirs, co-plaintiffs herein. Held, that as plaintiff was not a party grantee in the deed, made to his wife by her father, or assignee of the covenants therein, he could have no recourse against the grantors, or either of them in the deed to his wife, for a breach of the covenant against incumbrances, even though he did thereafterwards join in a deed with his wife, embracing the usual covenant against incumbrances.

2. ———: ———: ———: DEMURRER: CLOSE OF CASE, SUSTAINED. A party can not maintain a suit for a breach of warranty against incumbrances, unless he be a party to the deed containing the covenant, or an assignee thereof, although he may have subsequently conveyed the same land by such a covenant, and a petition seeking to recover damages occasioned by a breach of the covenant against incumbrances, that fails to set forth that state of facts, fails to state a cause of action, and is bad.

3. ———: HEIRS OF DECEASED WITHOUT REMEDY, WHEN. Nor will the heirs of a deceased mother, who prior to her death had conveyed certain land, that was incumbered by a deed of trust, have a cause of action against a former grantor to herself, containing the proper covenants, unless the incumbrance was discharged by her before her death, or out of the assets of her estate.

Appeal from the Stoddard Circuit Court.—*Hon. J. L. Fort,* Judge.

AFFIRMED.

*C. L. Keaton* for appellant.

(1) The demurrer to plaintiffs' petition admits all the material facts alleged therein, and should have been overruled. Verden v. St. Louis, 131 Mo. 74; Childs v. Johnson County, 144 Mo. 80. (2) F. M. Ladd took by virtue of his marital rights under Mrs. Ladd's deed, both possession and seizin of the land conveyed after issue born under the laws of this state. "It necessarily follows from these decisions that the right of the husband to the possession of the wife's real property as it existed at common law has not been taken

away by this statute." Sec. 6868, R. S. 1889; Flesh v.
Lindsey, 115 Mo. 16; Brown et al. v. Dressler, 125 Mo. 589;
Clay v. Mayr, 144 Mo. 380.    (3)    "A tenant by the curtesy
initiate [the husband] is seized of a freehold estate in his own
right, and the interest of his wife is a mere reversionary in-
terest depending upon the life estate of the husband."    Ro-
bards v. Murphy, 64 Mo. App. 90; Dyer v. Wittler, 89 Mo.
81.    (4)    The court put the deed to Mrs. Ladd for the law
and said F. M. Ladd had no title or estate and was a volunteer.
But the supreme court says:    "The error in this is that the
creation of the particular estate is the act of the marital law,
and not of the husband's deed; the latter simply transfers
what the former creates.    Under the facts and authorities, the
seizin and possession of the wife by operation of the marital
law, is transferred to the husband during his life."    Dyer v.
Wittler, 89 Mo. loc. cit. 89.    (5)    Plaintiff, F. M. Ladd, being
bound by his covenants and having the estate as stated above,
when the land was sold, under the deed of trust and the owner
of the paramount and superior title would have evicted Mrs.
Cook, the last purchaser, and given her a right of action
against him.    When this was threatened, she demanded pro-
tection in the estate and possession from plaintiff, F. M. Ladd.
"It is apparent that he remains interested in the success of
the title after his transfer to the extent of his own covenant
at least.    After indemnifying his covenantee he has the right
to look to his covenantor.    After having discharged the obli-
gation of his own covenant, he can call upon his covenantor
to make good to him the amount for which he was liable and
has paid off."    Rawle on Covenants [4 Ed.], 341; Dicksen
v. Desire, 23 Mo. 151; Priest v. Deavers, 22 Mo. App. 276;
Hall v. Bray, 51 Mo. 288; Hunt et al. v. Marsh et al., 80
Mo. 396; Allen v. Kennedy, 91 Mo. 324; State ex rel. Bayha
v. Phillips, 97 Mo. 331; Peters v. Bowman, 98 U. S. 56-61;
Lawless v. Collier's Ex., 19 Mo. 480; Rawle on Cov. [5 Ed.],

sections 175, 176, 192 and 233.   (6)   And he need not wait for an eviction of his grantees mediate or immediate, but when the hostile claim is asserted he may act and only assumes the burden of proving the validity of the claim and title and that the amount paid is reasonable.   "Under the decisions of this court the existence of a paramount right or title and the hostile asserting it by suit or otherwise constitutes a breach of the covenants sued upon.   The covenantee is not bound to wait for actual dispossession under process, but may after such assertion, pay off or extinguish the right by purchase, and his measure of damages will be the reasonable value of the right so discharged or extinguished by him."   Language of the Supreme Court in Ward v. Ashbrook, 78 Mo. 515; Lawless v. Collier, 19 Mo. 480; Walker v. Deaver, 79 Mo. 664; Rawle on Cov. [5 Ed.], secs. 147 et seq.; Kellogg v. Malin, 62 Mo. 429; Hall v. Bray, 51 Mo. 288.   (7)   Rawle on Covenants [5 Ed.], section 188, says:   "And if the purchaser feels the inconvenience of existing incumbrances, and the hazard of waiting until he is evicted, he may go and satisfy the mortgage [deed of trust] and then resort to his covenants."   Page 270, citing Kellogg v. Malin, *supra*; Jones v. Whitsett, 79 Mo. 188; Eagin v. Martin, 71 Mo. App. 60; Mitchner v. Holmes, 117 Mo. 185.

*N. A. Mozley* for respondents.

(1)   Have appellants a cause of action in this behalf against respondents?   And first as to appellant, F. M. Ladd; has he a cause of action?   The right to sue on account of a breach of warranty against incumbrances arises *ex contractu* and the contract is between the grantor (in this case) and the grantee and his heirs and assigns and no other persons.   (2) If F. M. Ladd can maintain this suit for himself against the Montgomery heirs it must be because their ancestor was liable to him on account of a breach of the covenants of warranty

against incumbrances in his deed which was made, not to F. M. Ladd, but to Emma F. Ladd, her heirs and assigns. And if such liability upon the part of the Montgomery heirs to F. M. Ladd in fact exists it must be because said Ladd is either Montgomery's grantee, or because he is the heir or assign of Emma F. Ladd, who is Montgomery's grantee. (3) The petition shows upon its face that F. M. Ladd is neither Montgomery's grantee or covenantee, and that he is neither heir, assign or legal representative of any person connected with the several conveyances of these lots. (4) If one who is neither a grantee or covenantee of the original warrantor, nor an heir or assign of such grantee can maintain an action of this character against the original grantor on account of a breach of covenant against incumbrances in his deed, then, manifestly, there is no end to the number of persons who may also maintain a like action. "A covenant in a deed *inter partes* is only available between those who are parties to it. When a deed is made *inter partes*, no one who is not expressed to be a party can sue on a covenant contained in it. This is not a mere rule of construction, but a positive law." 4 Am. and Eng. Ency. of Law [1 Ed.], p. 506; 3 Washburn on Real Property [3 Ed.], sec. 20, p. 400. But it is urged that F. M. Ladd took an estate of curtesy in the lots by virtue of his marital relations with Emma F. Ladd. In other words as tenant by the curtesy he had a vested estate in said lots and was therefore, in the line of warranty from the original grantor. (5) The error of this argument is in the assumption that he had a curtesy in the lots because he was Mrs. Ladd's husband. He had no curtesy nor any other kind of estate or vested right on that account. To give the husband a vested estate as tenant by the curtesy certain contingencies must occur, viz.: the relation of husband and wife; issue born alive and the death of the wife seized of the real estate.

There could have been no curtesy consummate or vested estate in the husband for the reason that the petition alleges that said lots were conveyed by Mrs. Ladd prior to her death. One of the contingencies, therefore, indispensable to the creation of the estate of tenant by the curtesy, viz.: the death of the wife seized of the real estate, is wanting in this case. (6) This leaves, undisposed of, but one more theory along this line employed by appellant's counsel in his endeavor to carve from the land of another an estate for his client, viz.: that F. M. Ladd was a tenant by the curtesy initiate and as such seized of a freehold estate in said lots. If this contention ever was the law, it is not the law now. (7) The petition shows that these lots were bought and paid for by Emma F. Ladd and that the deed of conveyance was made to her. Therefore, they became and were her separate property, under the statute, with all issues, rents and profits and was under her sole control. R. S. 1889, sec. 6869. (8) There is no estate or vested right of the husband as tenant by the curtesy initiate in the wife's separate property. "As this land has been sold, during coverture, his curtesy expectant, if there be such a contingent estate, is gone, and at her death no right to curtesy would survive to her husband." Leggett v. McClelland, 39 Oh. St. 627. (9) Have appellants Claud and Lena Ladd a cause of action? Mrs. Ladd had no cause of action against Montgomery or his heirs at the time she conveyed to Hart, for more than nominal damages, for the reason that the outstanding incumbrance was not asserted against her to her damage while she was in possession. Therefore when she conveyed to Hart she conveyed also whatever right of action she had against her grantor or his heirs on account of the breach in his warranty against incumbrances. (10) In other words covenants of this character run with the land so long as the possession thereof accompanies the conveyance and the outstanding incumbrance is not asserted against the grantee in

in the "Cosmos" a newspaper published in said county, of such limited circulation that neither plaintiff nor any one in interest with plaintiffs had actual notice of such sale until after the day of the sale, and said property had been sold to George Houck, who took his trustee's deed and the legal title to said real estate, who conveyed the same by quitclaim deed to Emil Weber, who purchased the same under a second foreclosure sale made by said plaintiff, on the eighteenth day of November, 1898, for and on account of some informality in the first, or former sale to said Houck, and the said Emil Weber conveyed said real estate by quitclaim deed to plaintiff F. M. Ladd, for and at the price and sum of two hundred and forty-one dollars and fifteen cents, as aforesaid; all which said deeds this plaintiff has put to record at the expense of four dollars and fifty cents, besides his other expenses and loss of time in the premises, to save his grantees and warranty harmless as far as possible, all which sums, he, the said F. M. Ladd was compelled to pay to protect the lawful claims and demands of all persons whomsoever in the premises, to wit: His grantees mediate and immediate of all said real estate by warranty deed from him and the said wife, E. F. Ladd as aforesaid.

"That after the execution of said deeds by the said J. C. Montgomery and Amanda Montgomery, as herein stated, the said J. C. Montgomery departed this life, leaving as his sole heirs at law the said Amanda Montgomery, his widow; and Nancy Jane Cooper, Rachel B. Williams, Malinda E. Woodall, William J. Montgomery, James M. Montgomery, Robert L. Montgomery, and Casa A. Casy, his children; and Joel Cooper, Josie Cooper, Lillie Cooper, Artie Cooper, Albert Cooper and Roxie Cooper, his grandchildren, and children of Mary Ann Cooper, who was a daughter of J. C. and Amanda Montgomery; and one Jesse McElwrath duly administered the estate of the said J. C.

the said Emma F. Ladd (by the name and style of E. F. Ladd) and plaintiff, F. M. Ladd, by their warranty deed sold and conveyed said lots to John Hart for the sum of five hundred dollars, which deed is duly recorded in book No. 20 at page 302 of the records of warranty deeds for said county, on the twenty-first day of July, 1896.

"That afterwards the said John Hart and Rhoda J. Hart, his wife, sold and conveyed said lots by their warranty deed to Laura Cook, which deed is duly recorded in book No. 25, at page 132 of the records of warranty deeds of and for said county.

"Plaintiffs further state that the said J. C. Montgomery and defendant, Amanda Montgomery, prior to the execution of their said deed to E. F. Ladd, as aforesaid, to wit: On the sixth day of September, 1890, executed and delivered to one D. B. Garrison, their deed of trust, conveying said lots three (3) and four (4) in block four (4) in Deal & Boughton's addition to Dexter, with power in the acting sheriff of Stoddard county to foreclose the same in certain contingencies, which deed of trust was made to secure to Albert Leet the payment of the sum of one hundred and fifty dollars according to the note of said J. C. Montgomery, dated Dexter, Mo., September 2, 1890, for $150, with interest at the rate of ten per cent per annum due four months after date, on which said note was paid the following sums, to wit: On the second day of January, 1891, $5, and September 22, 1892, $10; on February 4, 1893, $8; and September 22, 1893, $15. That the balance thereof principal and interest, remaining due and unpaid on the fifteenth day of October, 1898, two hundred and forty-one dollars and fifteen cents ($241.15) including the costs of foreclosing said deed of trust, when the sheriff of said county, James A. Evans, proceeded to foreclose said deed of trust, and enforce the payment out of said real estate described in said deed of trust, and advertised said real estate for sale

possession to his damage.    Hunt v. Marsh, 80 Mo. 398; Jones v. Whitsett, 79 Mo. 191; Allen v. Kennedy, 91 Mo. 329.

BOND, J.—This cause was instituted in the circuit court of Stoddard county at its March term, 1899, on the petition below, except that part marked and indicated as "Amendment."   The amended petition was filed March 18, 1899, and omitting parties, is to wit:

"Plaintiffs for amended petition state that. plaintiff, F. M. Ladd, was and is the husband of Emma F. Ladd, now deceased, and that Claud Ladd and Lena Ladd are her children and heirs at law, and that plaintiff F. M. Ladd is the father and duly appointed and qualified guardian and curator of plaintiffs, Claud Ladd and Lena Ladd, who are minors under the ages of twenty-one and eighteen, respectively.   That the defendants above named are the widow, children and grandchildren of J. C. Montgomery, deceased, and defendant, Amanda Montgomery (with the husbands of those married), and are the only heirs at law of said J. C. and Amanda Montgomery.

"Plaintiffs further state that on the 5th day of February, 1891, that said J. C. Montgomery and defendant, Amanda Montgomery, made, executed and delivered for said Emma F. Ladd, wife and mother of plaintiffs, their warranty deed conveying to her lots three (3) and four (4) in block four (4) in Deal & Boughton's addition to the town (now city) of Dexter, in Stoddard county, Missouri, for the consideration of five hundred dollars, which sums were well and truly paid to the said J. C. Montgomery and Amanda Montgomery as therein stated, which said deed was duly recorded in book No. 10 at page 373, for recording warranty deeds for said county, on the sixth day of February, 1891, at one o'clock and ten minutes p. m. of said day.

"That afterwards on the nineteenth day of March, 1896,

Montgomery, and said administration has been entirely closed, final settlement made therein, and the said administrator duly discharged therefrom.

"Plaintiffs further state that the defendant herein, the said Amanda Montgomery, as widow, and the other defendants as heirs at law of the said J. C. Montgomery, have received by descent from the said J. C. Montgomery and his estate, property, effects and real estate of and to a greater sum and amount and value than the said sum of two hundred and forty-one dollars and fifteen cents and attorney's fees and costs herein, and especially the following described real estate situate in the county of Stoddard and state of Missouri, to wit:

"Beginning at the southwest corner of the northeast quarter of the southwest quarter of section eighteen (18) township twenty-five (25) range ten (10) east, running thence north 168 rods to a point 72 rods south of the northwest corner of the northeast quarter of the northwest quarter of said section eighteen (18) thence due east 121 rods, thence south about 168 rods, to the southwest corner of the east half of the northwest quarter of the southeast quarter of said section eighteen (18), thence west 120 rods to the place of beginning, containing 126 acres more or less, of the value of about two thousand dollars."

The following is amendment:

"And plaintiffs state that Ambrose P. Cooper and Nancy J. Cooper, his wife, defendants herein, brought an action in partition for the lands above described, filed their petition for partititon of the above described lands and obtained an order and judgment of sale; during said proceeding or prior thereto the said defendant, Ambrose P. Cooper, with intent to cheat and defraud these plaintiffs and the heirs of J. C. Montgomery and defendant Amanda Montgomery, procured from the said Amanda Montgomery a lease of said premises of and

for her unassigned dower interest therein, to wit: The one-third part thereof for and during her natural life, and oppressively and wrongfully went into and seized the possession against the will and protest of his co-heirs and tenants in common, and utterly refused to pay them or either of them any of the rents and profits of the remaining two-thirds of said premises and then caused said real estate to be advertised for sale under the judgment and order of sale and partition aforesaid and caused land to be sold on the twenty-fourth day of November, 1896, at and before such sale by means of his wrongful possession, acts and doings in that behalf, wholly suppressed bidding for said premises and wholly prevented competition in the bidding at said sale, bid off the entire premises of the value of about two thousand dollars as aforesaid, at the wholly inadequate price and sum of four hundred dollars and paid out of this small sum and amount the sum of sixty-seven dollars and five cents and assumed debts of the deceased J. C. Montgomery, claiming the same as a lien on said real estate described herein and the costs of said proceedings, and plaintiffs are advised and believe that whatever balance was and is due Malinda E. Woodall, Rachel B. Williams, Joel Cooper, Josie Cooper, Lillie Cooper, Artie Cooper, Albert Cooper and Roxie Cooper is still in the hands of J. N. Patterson, former sheriff of this county, and that he has made default on his sheriff's bond and has wholly wasted and appropriated to his own use and has become wholly insolvent and said heirs for some cause unknown to plaintiffs have never received their share of the proceeds of the sale of said lands, that said sheriff received and misappropriated said sums of money in the latter part of the year 1896, and the right of action of said heirs against said J. N. Patterson on his official bond, plaintiffs are advised and believe, will be barred by the statute of limitations during the present year, and plaintiffs are advised and believe

that said heirs as defendants herein may plead and show to.
the court that they have received no sum or amount from the
estate of J. C. Montgomery, deceased, and thereby wholly
defeat plaintiffs' recovery of and from them in this action by
reason of the premises." (The end of the amendment except
the prayer appropriate to it).

"That plaintiffs were compelled to pay off and discharge
the incumbrance so placed and given upon said lots 3 and 4,
block 4, in Deal & Boughton's addition to Dexter as aforesaid,
to protect their property, and the liability created in and by
the covenants of warranty made and given by the said E. F.
Ladd the plaintiff to F. M. Ladd, as herein set out and stated,
and against which the said J. C. Montgomery and defendant
Amanda Montgomery expressly covenanted and warranted in
their covenants in their said deed of warranty to the said E. F.
Ladd, dated February 6, 1891, aforesaid, to wit:   'The said
grantors (J. C. and Amanda Montgomery) herein covenanting
and they are lawfully seized of an indefeasible estate in fee
in the premises herein conveyed; that they have good right to
convey the same; that the said premises are free and clear from
any incumbrances done or suffered by them or those under
whom they claim, and that they will warrant and defend the
title to the said premises unto the said party of the second
part, and unto his heirs and assigns forever, against the lawful
claims and demands of all persons whomsoever.'   That neither
the said J. C. Montgomery and Amanda Montgomery nor the
defendants nor any one of them or either of them, have paid
off and discharged said incumbrance, nor defended the title to
the premises, but on the contrary they and each of them have
wholly failed, neglected and refused to pay off and discharge
said incumbrance so placed on said lots 3 and 4 in block 4 as
aforesaid, though often requested so to do; and fail, neglect
and refuse to pay and repay plaintiffs' said sum of two hundred
and forty-one dollars and fifteen cents, nor costs and charges

hereinbefore metioned, whereby plaintiffs have been compelled to employ counsel, to wit, C. L. Keaton, attorney at law, at the reasonable price and fee of fifty dollars, and to bring this action for reimbursement and for the recovery of said sum of money so paid out in this behalf.

"Wherefore plaintiffs pray judgment for said sum of $240.15, $4.50 and $50 attorney's fees, together with their costs and charges in this behalf against the defendants and that said judgment be declared a charge against and upon said lands received by the defendants by descent from the said J. C. Montgomery, deceased; that the sale of said lands under the judgment and order of partition may be set aside and that said lands may be sold by order of this court and that these plaintiffs may be fully reimbursed and indemnified in this behalf for all sums paid out and expended as herein stated and also to be laid out and expended. And that the court appoint a receiver to collect and receive from J. N. Patterson, former sheriff of this county, and his bondsmen the several amounts due from him the said J. N. Patterson to the said Malinda E. Woodall, Rachel B. Williams, Joel Cooper, Josie Cooper, Lillie Cooper, Artie Cooper, Albert Cooper and Roxie Cooper, and have and hold said sums of money to be paid over and delivered to these plaintiffs *pro rata* on their demand herein claimed and for all proper relief herein as to the court may seem meet according to equity, right and good conscience in the premises."

"C. L. Keaton,<br>"Attorney for plaintiffs."

To which the defendants on the 22d day of March, 1899, filed the following demurrer:

"F. M. Ladd et al., Plaintiffs

    v.

Amanda Montgomery et al., Defendants.

### Demurrer

. "Now come the above named defendants by attorney, and demur to plaintiffs amended petition filed in said cause and as grounds therefor state: (1) Said petition does not state facts sufficient to constitute a cause of action either at law or in equity. (2) Said petition discloses upon its face that no cause of action existed at the time of filing said suit, in favor of plaintiffs and against the defendants herein. (3) Said amended petition is at variance with and a departure from the alleged cause of action attempted to be stated in the original petition.

"Wherefore defendants ask that they be not required to answer or defend against said petition and that they be hence discharged with their costs.

                "N. A. Mozley,

                    "Attorney for defendants.

"Which demurrer afterwards on the twentieth day of March, at said March term, the court sustained, and plaintiffs, electing to stand on their pleadings and declining to plead further, the court entered final judgment for the defendants.

"Plaintiffs filed their affidavit for appeal, which was allowed, to this court."

The only question presented is, does the foregoing petition state sufficient facts to constitute a cause of action? The suit is by the husband and heirs of the original grantee for alleged breach of a covenant against incumbrances, in that the land was subject to a valid deed of trust when it was

conveyed to the wife which was enforced against it after the wife by warranty deed, in which the husband joined, had conveyed it to third parties, the purchaser under the foreclosure sale having quitclaimed the land to the plaintiff for the sum due on the deed of trust when it was foreclosed. The husband was not a party to the conveyance to his wife; that conveyance having been made February 5, 1891, operated under the statutes then in force to vest the wife with a statutory separate estate in the land, with a possibility of curtesy to the husband—children having been born—in the event of his survival of his wife. Before this estate could accrue in him the husband joined in his wife's conveyance of the land. The husband not being a warrantee in the deed to his wife, assumed, notwithstanding, to join in the covenants contained in her deed of conveyance. This gave him no recourse on her grantor for breach of a covenant not made nor assigned to him. The wife or her representatives might have been entitled to such a remedy over against her grantors or their heirs to the extent of assets descended, provided the burden of the incumbrances had been discharged by the wife or out of her estate, for she was a convenantee in the original deed to her, but certainly no such right enured to plaintiff, to whom no such covenants had been made or assigned, merely because he bought the land from the person who had purchased it at a foreclosure sale under a deed of trust which was prior to the conveyance to his wife. Hence it is clear plaintiff's petition shows no right of action in him individually.

Neither does it show any cause of action in the heirs of his wife. For it distinctly appears from the petition that she did not remove the incumbrance, nor was it discharged out of the assets of her estate after her death. On the contrary, the petition expressly alleges that the husband himself purchased the property from the vendee at the foreclosure sale, giving as a consideration the amount due on the deed of trust

at the date of its foreclosure, and that he took the title to himself. It follows that there was no error in the judgment of the circuit court sustaining the foregoing demurrer, and it is affirmed. All concur.